UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
QIAN XIONG LIN and HANG QI LIN
on their own behalf and on behalf
of others similarly situated,                    MEMORANDUM & ORDER
                                                 17-CV-4994 (JS)(AYS)
              Plaintiffs,

     -against-

DJ'S INTERNATIONAL BUFFET, INC.;
DING CHEN; DAVID LIANG a/k/a
DAVID LIAN; XIN SHIRLEY BI a/k/a
SHIRLEY KIN BI,

              Defendants.
-------------------------------X
APPEARANCES
For Plaintiffs:       Aaron Schweitzer, Esq.
                      John Troy, Esq.
                      Troy Law, PLLC
                      41-25 Kissena Boulevard, Suite 103
                      Flushing, New York 11355

For Defendants:       Michael Steven Romero, Esq.
                      Benjamin B. Xue, Esq.
                      Xue & Associates, P.C.
                      1 School Street, Suite 303a
                      Glen Cove, New York 11542

SEYBERT, District Judge:

          Qian Xiong Lin ("Q. Lin") and Hang Qi Lin ("H. Lin")

(collectively, "Plaintiffs"), commenced this action pursuant to

the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"),

and American Disabilities Act ("ADA") against DJ's International

Buffet Inc. ("DJ's International"), Ding Chen ("Chen"), David

Liang ("Liang"), and Xin Shirley Bi ("Bi") (collectively,

"Defendants").   (See generally Am. Compl., ECF No. 49.)   Pending

before the Court is Defendants' motion for partial summary judgment which seeks dismissal of Plaintiffs' FLSA and NYLL claims to the extent they are asserted against Defendant Bi, as well as Plaintiff Q. Lin's ADA claim.  (See generally Mot., ECF No. 95; Support Memo., ECF No. 95-1.)  For the following reasons, Defendants' motion is GRANTED in part.

### FACTUAL BACKGROUND[1]

DJ's International is a restaurant located at 1100 Stewart Avenue, Garden City, New York.  (Am. Compl. ¶ 9.) Plaintiff Q. Lin worked for DJ's International as a sushi chef from July 2011 through June 2017.  (Id. ¶ 34.)  Plaintiff H. Lin was employed as a waiter from January 2011 to December 2014.  (Id. ¶ 57.)  Throughout their respective periods of employment, Plaintiffs allege that they were (1) not paid wages, minimum wages, overtime compensation, spread of hours premiums, and tip money to which they were entitled, and (2) not provided wage statements and notices.  Plaintiff Q. Lin also claims "that he developed symptoms of difficulty in performing his tasks" as a sushi chef and could no longer move his arm as required.  (Id. ¶ 135.)  He further

---

[1] The facts are drawn from Defendants' Local Rule 56.1 Statement and Plaintiffs' Local Rule 56.1 Counterstatements, unless otherwise stated. (See Defs. 56.1 Stmt., ECF No. 95-2; Pls. 56.1 Counterstmt., ECF No. 96-10.)  The Court notes any relevant factual disputes.

alleges that he asked Defendants to provide him medical care on June 18, 2017, which they refused to do, and consequently fired him. (Id. ¶ 136.)

H. Lin was introduced to DJ's International by an employment agency and Q. Lin was referred to the restaurant by a friend of his wife. (H. Lin Depo. Tr., ECF No. 95-12, at 19-20; Q. Lin Depo. Tr. at 14.) There is no evidence in the record as to whether any of the individual Defendants interviewed Plaintiffs or made the decision to hire them to work at DJ's International.[2] H. Lin was supervised by Defendant Liang, whom he referred to as the manager. (H. Lin Depo. Tr. at 26, 48.). Liang also controlled the working conditions for H. Lin and the rest of the wait staff, since "the wait staff were under David." (Id. at 26.)

Q. Lin was supervised by Defendant Chen, whom he identified as "the boss," as well as Liang, the manager. (Q. Lin Depo Tr. at 15, 42-43, 61.) When Q. Lin was hired, Chen, the "master chef," taught him to make sushi and told him he would be paid $1700 per month. (Id. at 14-15, 17.) Chen handled Q. Lin's pay and he provided transportation for Q. Lin to get to the

---

[2] H. Lin specifically testified that he was not interviewed. (H. Lin Depo. Tr. at 25-26.) When Q. Lin was asked if he interviewed with anyone at the restaurant before being hired, his answer was non-responsive. (Q. Lin Depo Tr. at 14 ("Q. Did you interview with anyone at DJ International before you got the job? . . . A. I at first started to learn how to make sushi at DJ Buffet.").)

restaurant.  (Id. at 30, 61, 83.)  "The boss" also told him when he could or could not file his W-2 forms.  (Id. at 27-28.)  In addition, Q. Lin testified that he was involved in a fight with two other employees in the kitchen and both of his shoulders were injured as a result.  (Id. at 57.)  He said his shoulders were beaten and hard to move, and that he sued his attackers; however, he did not file a claim for workers' compensation benefits.  (Id. at 57-58, 60.)

Notably, Plaintiffs had varying understandings as to whom they believed were defendants in this action; H. Lin thought he was only suing DJ International whereas Q. Lin thought he was suing the restaurant, Liang, and Chen.  (H. Lin Depo. Tr. at 46-47; Q. Lin Depo. Tr. at 69-70.)  In addition, H. Lin did not even know that the Amended Complaint was asserted as a collective action nor did anyone at Troy Law explain to him what was a collective action.  (H. Lin Depo. Tr. at 42-44.)  Notwithstanding, Plaintiffs were consistent to the extent that they did not know they were suing Defendant Bi.  In fact, neither Plaintiff knew who Shirley Bi was, and confirmed this on numerous occasions throughout their respective depositions.  (H. Lin Depo. Tr. at 46-50; Q. Lin Depo. Tr. at 61, 70.)  Plaintiffs were also explicitly clear that Bi did not supervise them, set their pay or work schedules, or control

their conditions of employment.  (H. Lin Depo. Tr. at 48-49; Q. Lin Depo. Tr. at 70-71.)[3]

Despite Plaintiffs attempts to create issues of fact, particularly with respect to Bi's role, duties, and responsibilities at DJ's International, the Court does not find any admissible evidence in the record to contradict Plaintiff's deposition testimony on this point.  Plaintiffs' counsel, Aaron Schweitzer and John Troy, attempt to undermine their clients' testimony by directing the Court's attention to their interrogatory responses.  These responses, however, are problematic for several reasons.

As part of her routine protocol in FLSA cases, Magistrate Judge Anne Y. Shields directs FLSA plaintiffs to respond to interrogatories posed by the Court. (See ECF No. 19.)  In response to Court Interrogatory No. 2, which asked Q. Lin who was his immediate supervisor, he identified the three individual

---

[3] Despite being asked on numerous occasions if he knew who Shirley Bi was, at the end of his deposition, Q. Lin apparently identified Bi as the wife of another sushi master chef, Mr. Zhong.  (Q. Lin Depo Tr. at 80.)  Neither Mr. Zhong nor his wife worked regularly at the restaurant and they would only "come over to help" on busy days, such as holidays.  (Id.)  Moreover, they did not supervise Q. Lin nor set his hours or pay.  (Id. at 81-82.)

Defendants.  (Q. Lin Ans. to Court Interrog. ¶ 2, ECF No. 96-6.)[4]

Then, in separate requests, Defendants asked Q. Lin and H. Lin to:

"Identify all persons who, during your alleged employment at DJ's

International Buffet Inc., were responsible for supervising your

performance, setting your hours, and setting your rate of

compensation." (Q. Lin Ans. to Defs. Interrog. ¶ 17, ECF No. 96-

5; H. Lin Ans. to Defs. Interrog. ¶ 16, 96-3.)  Both Plaintiffs

responded by identifying the three individual Defendants once

again.  Moreover, in Interrogatory No. 3, Defendants asked H. Lin

to describe the amount, frequency, and manner he received payment.

In relevant part, he answered, "Throughout his employment,

Plaintiff was not paid a base wage, but received tips from a tip

pool in which he contributed.  However, this tip pool was retained

by XIN SHIRLEY BI a/k/a Shirley Kin Bi." (H. Lin Ans. to Defs.

Interrog. ¶ 3.)

        All of these interrogatory responses are written and

signed in English; however, neither Q. Lin nor H. Lin can read or

understand English. (H. Lin Depo. Tr. at 42, ECF No. 95-12; Q. Lin

Depo. Tr. at 8, ECF No. 95-1.)  H. Lin's responses, which he did

sign, are not even dated.  They are accompanied by a declaration

---

[4] H. Lin was not yet a named plaintiff at the time of Judge Shields'
Order which required responses to the Court-issued
interrogatories.

by He Li, notarized by both of Plaintiffs' attorneys, which states that Li provided a "true and accurate translation" of the document to H. Lin.  (H. Lin Ans. to Defs. Interrog. at 15.)  There is no indication as to when or how the interrogatory questions and answers were translated to H. Lin, and, more concerning is H. Lin's testimony that neither of his attorneys were present, in-person or by videoconference, when he signed the document, rather, the only person he met with that day "was a lady."  (Id. at 45-46.)  As if these circumstances were not disconcerting enough, H. Lin's testimony was clear that he did not answer Interrogatory No. 15 nor that anyone translated the answer to him.  (Id. at 49-50.)  The Court also notes that when questioned by defense counsel as to Paragraph 64 in the Amended Complaint, which states that throughout H. Lin's employment, Bi retained money from the tip pool, H. Lin testified that he "did not provide this information to anyone." (Id. at 51-52 (citing Am. Compl. ¶ 64).)  This same language from Paragraph 64 was parroted by Plaintiffs' counsel in H. Lin's response to Interrogatory No. 3.  (H. Lin Ans. to Defs. Interrog. ¶ 3.)

Then, as to Q. Lin, his interrogatory responses are not accompanied by any declaration concerning translation.[5]

---

[5] The Court notes that Q. Lin's interrogatory responses appear to have been prepared while he was represented by prior counsel.

Particularly with respect to the circumstances surrounding the conclusion of his employment for DJ's International, despite the allegations in the Amended Complaint and his response to Defendants' Interrogatory No. 19 which provide that he was fired, Q. Lin testified that he quit and not that Defendants terminated him. (Q. Lin Depo Tr. at 62 ("Q. After the Father's Day incident, did you quit? A. Yes. Q. Why did you quit? A. After the argument I did not want to do anymore.").)

Despite the Court's concerns regarding the veracity of the pleadings and discovery materials prepared by Plaintiffs and Troy Law throughout this litigation, the Court is not discrediting the statements contained therein on that basis. Rather, as explained in more detail below, the Court deems Plaintiffs' written discovery insufficient to create issues of fact on the grounds that the interrogatory responses are too conclusory.

<u>PROCEDURAL HISTORY</u>

The instant case was commenced against Defendants on August 24, 2017, solely by Plaintiff Q. Lin, on behalf of himself and others similarly situated. (Compl., ECF No. 1.) On July 5, 2019, after obtaining leave from the Court, Q. Lin filed an Amended Complaint to add H. Lin as co-Plaintiff. (June 25, 2019 Elec. Order; Am. Compl.) The Amended Complaint asserts eleven causes of action against Defendants, which are: (1) failure to pay minimum

wages pursuant to the FLSA; (2) failure to pay minimum wages pursuant to the NYLL; (3) failure to pay overtime compensation pursuant to the FLSA; (4) failure to pay overtime compensation pursuant to the NYLL; (5) illegal tip retention; (6) spread of hours; (7) failure to provide meal breaks; (8) failure to keep records; (9) failure to provide wage notices; (10) failure to provide wage statements; and (11) wrongful termination pursuant to the ADA. (Am. Compl. ¶¶ 79-137.) The first ten causes of action, which are all raised pursuant to the FLSA and NYLL, were made by Plaintiffs on behalf of a collective or Rule 23 class. (Id. ¶¶ 79-129.) The eleventh cause action, which is pursuant to the ADA, was solely raised by Plaintiff Q. Lin. (Id. ¶¶ 130-37.) Defendants filed their Answer on August 2, 2019, and raised two counterclaims. (Answer, ECF No. 2.) Plaintiffs filed an Answer to the counterclaims on September 12, 2019. (Pls. Answer, ECF No. 55.)

On September 13, 2019, Plaintiffs moved for conditional certification of a FLSA collective, which was granted in part and denied in part by Magistrate Judge Anne Y. Shields on November 7, 2019. (Nov. 7, 2019 Order, ECF No. 66.) Judge Shields permitted Plaintiffs to proceed with a collective that consists of: "[A]ll non-exempt, non-managerial employees, whether tipped or non-tipped, who were employed by Defendants from August 21, 2014 to

the present." (Id. at 2.)  Defendants sought reconsideration of Judge Shields' ruling, and upon reconsideration, she adhered to her prior decision.  (Dec. 4, 2019 Elec. Order.)  Defendants then appealed to this Court, which upheld Judge Shields' decision concerning the conditional certification motion.  (Dec. 28, 2020 Memorandum & Order, ECF No. 84.)  The Court notes that no additional plaintiffs have opted-in to this action.

The instant motion by Defendants for partial summary judgment was filed on May 17, 2021.

## ANALYSIS

I.  Legal Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wagner v. Chiari & Ilecki, LLP, 973 F.3d 154, 164 (2d Cir. 2020) (quoting Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007)) (internal quotation marks omitted). The movant bears the burden of establishing that there are no genuine issues of material fact in dispute. CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013).

Once the movant makes such a showing, the non-movant must proffer specific facts demonstrating "a genuine issue for trial." Giglio v. Buonnadonna Shoprite LLC, No. 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted).   Conclusory allegations or denials will not defeat summary judgment.   Id.

In reviewing the record, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)).   The Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

II.  Discussion

In their motion for partial summary judgment, Defendants seek dismissal of Plaintiffs' FLSA and NYLL claims against Bi on the grounds that she is not an "employer" as that term is defined pursuant to either statute.   Defendants also seek dismissal of Plaintiff Q. Lin's claim pursuant to the ADA.

11

A.   FLSA and NYLL Claims against Defendant Bi

1.   Applicable Law

For a plaintiff to prove liability pursuant to the FLSA, the plaintiff must first establish that the defendant meets the FLSA's definition of an "employer," which is broadly defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d); see Draskovic v. Oneota Assocs., LLC, No. 17-CV-5085, 2019 WL 783033, at *5 (E.D.N.Y. Feb. 21, 2019) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)).  The FLSA also broadly defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).  Due to the breadth of these definitions, the Second Circuit has instructed "that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concept."  Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013) (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 140 (2d Cir. 2008)) (internal quotation marks omitted).

The NYLL is the New York State analogue to the FLSA. See Escobar v. Del Monaco Bros. Indus. Inc., No. 14-CV-3091, 2016 WL 11481190, at *7 (E.D.N.Y. July 27, 2016) (citing D'Arpa v. Runway Towing Corp., No. 12-CV-1120, 2013 WL 3010810, at *18

12

(E.D.N.Y. June 18, 2013), report and recommendation adopted sub nom., 2016 WL 4275705 (E.D.N.Y. Aug. 13, 2016)). "Due to the similarities, a court approaches FLSA and NYLL claims in the same manner." Id. (citing Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015)); see also Ethelberth, 91 F. Supp. 3d at 360 ("[C]ourts in the Second Circuit have generally applied their analysis of a plaintiff's FLSA claim to a plaintiff's NYLL claim due to the substantial similarity in the provisions."). As such, courts routinely apply the economic realities test to determine whether an employer-employee relationship exists in accordance with both the FLSA and NYLL. Draskovic, 2019 WL 783033, at *5 (citing Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 922 (S.D.N.Y. 2013)).

The economic realities test focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Irizarry, 722 F.3d at 104-05. In addition, "the analysis depends on whether the defendant had 'operational control' over employees[,] . . . [which] does not necessarily require direct contact with employees and workplaces." Khurana v. JMP USA, Inc., No. 14-CV-4448, 2017 WL 1251102, at *3 (E.D.N.Y. Apr. 5, 2017)

(citing Irizarry, 722 F.3d at 110) (internal citation omitted).
Instead, a plaintiff can demonstrate liability "where the employer
exercises control over and makes decisions that 'directly affect
the nature or conditions of the employees' employment.'"   Id.
(quoting Irizarry, 722 F.3d at 110).

    2.   Application

       Defendants argue that Bi cannot be Plaintiffs' employer
because she never supervised their work; she did not pay Plaintiffs
or set their wages; and, she did not set their work hours or
control the conditions of employment.   Moreover, Defendants
contend that Plaintiffs did not even know who Bi was.  (See Support
Memo at 6-7.)  In support of these contentions, Defendants rely
upon the statements Plaintiffs made during their respective
depositions, which, as set forth above, make clear that Defendants
Liang and Chen carried out the responsibilities Plaintiffs claim
were performed by Bi.   Plaintiffs, on the other hand, argue
significant issues of material of fact exist over Bi's control of
employees due to the contradictions between Plaintiffs' written
discovery responses and deposition testimony.  (Opp'n at 6.)  They
also cite to two website screenshots, one from the New York State
("NYS") Liquor Authority which shows that Bi is the restaurant's
principal, and the second, which is from the NYS Department of
State, and list Bi as the restaurant's chief executive officer and

14

registered agent.  (See NYS Liquor Auth., ECF No. 96-1; NYS Dep't of State, ECF No. 96-2.)

Having considered the record and the parties' submissions, the Court finds the evidence proffered by Plaintiffs insufficient to defeat summary judgment on the issue of whether Bi was Plaintiffs' employer.  In a separate FLSA and NYLL action commenced by Troy Law, Yi Mei Ke v. JR Sushi 2 Inc., the court was confronted with a nearly identical scenario.  No. 19-CV-7332, 2022 WL 912231 (S.D.N.Y. Mar. 28, 2022).  The defendants filed a partial summary judgment motion to dismiss two of the named defendants on the grounds that the plaintiff's deposition testimony revealed the moving defendants were not "employers."  Id. at *3-4.  The plaintiff opposed the motion, relying on her interrogatory responses to contradict her testimony.  Id.  "[D]espite a searching review, [the Honorable Magistrate Judge Barbara Moses] failed to find 'even a shred of specific, admissible evidence' to show" the moving defendants were employers because the interrogatory responses were conclusory and "worthless boilerplate."  See id. at *3.  The Court also notes Judge Moses' painstaking review of the record revealed yet another instance of Troy Law over-pleading a case and not communicating to clients the contents of the documents they are being asked to sign.  In addition, Judge Moses pointed out that "Troy Law has previously been sanctioned, or

threatened with sanctions, for filing evidentiary materials on behalf of non-English speaking clients that were later contradicted by the clients' live testimony." See Yi Mei Ke v. J R Sushi 2 Inc., No. 19-CV-7332, Report & Recommendation, ECF No. 146 (Feb. 7, 2022), adopted by, 2022 WL 912231 (S.D.N.Y. Mar. 28, 2022).[6]

Here, too, Plaintiffs' interrogatory responses are nothing but conclusory and boilerplate that are inadequate to overcome their burden on summary judgment. Id.; see also Tracy v. NVR, Inc., 667 F. Supp. 2d 244, 247 (W.D.N.Y. Nov. 5, 2009)("I find that mere boilerplate allegations that an individual meets the various prongs of the economic reality test stated solely upon

---

[6] The litany of cases cited by Judge Moses includes: Lin v. Quality Woods, Inc., No. 17-CV-3043, 2021 WL 2343179, at *1 (E.D.N.Y. June 4, 2021) (ordering John Troy to show cause why he should not be sanctioned for pursuing FLSA case against a "bevy of parties that Troy alleged employed Plaintiff" when in fact "they never did," which was ultimately revealed when plaintiff testified under oath that he did not know many of the alleged employers), report and recommendation adopted, 2021 WL 4129151 (E.D.N.Y. Aug. 10, 2021); Ji Li v. New Ichiro Sushi, Inc., No. 14-CV-10242, 2020 WL 2094095, at *9-11 (S.D.N.Y. Apr. 30, 2020)(sanctioning Troy Law where multiple plaintiffs stated in their written direct testimony, prepared by their counsel, that Jian Ping Chen "was the 'boss' or 'lady boss' at Ichiro Sushi on Second Avenue," but "completely contradicted" that assertion in their live testimony at the bench trial); Jianjun Chen v. 2425 Broadway Chao Rest., LLC, 331 F.R.D. 568, 570, 572-73 (S.D.N.Y. 2019) (sanctioning Troy Law for serving discovery responses "which cannot be reconciled with Plaintiff's prior deposition testimony").

information and belief and without any supporting details—essentially 'a formulaic recitation of the elements of a cause of action'—are insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA." (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007))).

To the extent Plaintiffs rely upon the two NYS websites, which provide that Bi is the restaurant's principal, agent, or CEO, because "it is well established that, in certain circumstances, a corporate executive or officer may be held individually liable as an 'employer' under the FLSA," <u>Magnuson v. Newman</u>, No. 10-CV-6211, 2013 WL 5380387, at *8 (S.D.N.Y. Sept. 25, 2013)(quoting <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 139 (2d Cir. 1999)), that reliance is unavailing.  The title of Bi's purported role at DJ's International is not dispositive and this information, without more, would not lead a reasonable juror to conclude that Bi exercised the level of operational control required by the economic realities test.  Accordingly, Defendants' motion for summary judgment is GRANTED to the extent Bi shall be dismissed from this case.

B.   <u>Plaintiff Q. Lin's ADA Claim</u>

1.   <u>Applicable Law</u>

The ADA prohibits discrimination against a "qualified individual on the basis of disability" in the "terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To state a claim for discrimination under the ADA, a plaintiff must demonstrate that:

> (1) the defendant is covered by the ADA;
> (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability.

<u>Kelly v. N. Shore–Long Island Jewish Health Sys.</u>, 166 F. Supp. 3d 274, 285 (E.D.N.Y. 2016) (citation omitted) (quoting <u>Capobianco v. City of N.Y.</u>, 422 F.3d 47, 56 (2d Cir. 2005)).  While discriminatory intent may be inferred based on the totality of the circumstances, the plaintiff "'cannot rely solely on conclusory allegations of discrimination without any concrete evidence to support her claims.'" <u>Sherman v. County of Suffolk</u>, 71 F. Supp. 3d 332, 347 (E.D.N.Y.2014)(quoting <u>Kaufman v. Columbia Mem'l Hosp.</u>, 2 F. Supp. 3d 265, 278 (N.D.N.Y.2014)).  An "adverse employment action" is defined as a change in the terms and conditions of employment that is "materially adverse."  <u>Caskey v. County of Ontario</u>, 560 F. App'x 57, 59 (2d Cir. 2014)(internal quotation

18

marks and citations omitted); see also Sherman, 71 F. Supp. 3d at 344 ("A materially adverse change is a change in working conditions that is more disruptive than a mere inconvenience or an alteration of job responsibilities." (internal quotation marks and citation omitted)).  A termination is an example of an adverse employment action.  Id.

    2.  Application

Defendants move for summary judgment on Q. Lin's ADA claim on the grounds that he did not suffer an adverse employment action, namely, that he was not terminated from his employment at DJ's International because he quit.  (See Support Memo. at 9-10.) Defendants cite to Q. Lin's deposition testimony, in which he stated that he quit following an altercation with two other employees.  In opposition, Plaintiffs -- once again -- rely upon interrogatory responses which state, in sum and substance, that Liang told Q. Lin not to return to work.  (See Pls. 56.1 Counterstmt. ¶¶ 24-25.)  Plaintiffs also contend that Q. Lin "has shown . . . he was disabled within the meaning of the ADA or perceived to be so by his employer.  His actual disability was the repetitive stress injury he suffered as a sushi maker that made it difficult for him to work pain-free . . . without reasonable accommodation . . . ."  (Opp'n at 9.)  However, Plaintiffs contradict themselves by claiming the source of Q. Lin's injuries

was due to the altercation he was involved in with co-workers, and not due to "repetitive stress." (Id.) Then, Plaintiffs argue that, following the altercation, Liang told Q. Lin not to return to work, which constitutes a dismissal for adverse employment action purposes. (Id.) They also argue that Q. Lin was not offered a reasonable accommodation. (Id.) Although none of Plaintiffs' arguments are accompanied by a citation to any evidence in the record, the Court notes that the relevant facts in Plaintiffs' 56.1 Counterstatement are, once again, primarily supported by interrogatory responses. (See Pls. 56.1 Counterstmt. ¶¶ 23-24.)

Even if they are admissible, Plaintiffs misrepresent the contents of Q. Lin's interrogatory responses in their Rule 56.1 Counterstatement. The pertinent questions and responses are contained within Court Interrogatory Number 5, and Defendants' Interrogatory Numbers 5, 7, 12, 19, and 22. (See id. ¶¶ 23-25.) The Court reviewed each of these interrogatories, and there is no indication that Defendant Liang told Q. Lin not to return to work in any of them that would contradict Q. Lin's deposition testimony and create a disputed fact. (See Q. Lin Ans. to Court Interrog. ¶ 5 ("Defendants permitted and condoned abusive and violent behavior against me by co-workers. I was injured while on the job and Defendants refused to do anything about it or to provide me

20

with medical assistance or worker's compensation."); Q. Lin Ans. to Defs. Interrog. ¶ 5 ("Text messages sent by individual defendants to the Plaintiff after Plaintiff was forced to leave on account of an assault and battery as described in his initial pleadings."), ¶ 7 ("Defendants CHEN and LIANG telephoned Plaintiff on several occasions following an assault and battery against Plaintiff in June 2017. Defendants admitted that the assault and battery against Plaintiff was instigated and perpetrated by other employees, and Defendants admitted that they felt liable and recommended a doctor in Chinatown; in addition, Defendants expressed praise for Plaintiff's work and performance and asked him to return."), ¶ 22 ("Plaintiff was beaten by another employee during work time. For elaboration, Plaintiff refers to his Answer to Defendants' Answer and Counterclaim.").)  To the extent such a revelation may be contained within certain text messages Plaintiffs refer to, the text messages Plaintiffs submitted are in Chinese without any translation to English and are not being considered.  (See Text Msgs., ECF No. 96-8.)[7]

---

[7] Moreover, even if this evidence could be construed as a constructive discharge for purposes of an adverse employment action (although Plaintiff has not alleged such a claim) there is no competent evidence in the record to support Q. Lin's claim that he is even a qualified individual with a disability for purposes of an ADA claim.  42 U.S.C. ¶¶ 12102(1), 12112(a).

Accordingly, Defendants' motion for summary judgment on Q. Lin's ADA claim is GRANTED.

<u>CONCLUSION</u>

For the stated reasons, **IT IS HEREBY ORDERED** that Defendants' motion for partial summary judgment (ECF No. 95) is GRANTED IN PART to the extent that the FLSA and NYLL claims against Defendant Bi, as well as Q. Lin's ADA claim, are DISMISSED. Defendants' motion is DENIED WITHOUT PREJUDICE to the extent they seek attorneys' fees and costs for the now-dismissed claims. Defendants may renew their request at the conclusion of this case since such fees and costs could be satisfied from a judgment or future settlement of this action. The parties are directed to submit their proposed joint pre-trial order to Magistrate Judge Anne Y. Shields within thirty (30) days of the date of this Memorandum & Order.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March 31, 2022
       Central Islip, New York

22